# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

IN RE:

OTTAWA BUS SERVICE, INC.,

    *Debtor.*

WEBSTER CAPITAL FINANCE, INC.
F/K/A CENTER CAPITAL
CORPORATION,

    *Appellant,*

vs.

OTTAWA BUS SERVICE, INC.,

    *Appellee.*

Case No. 12-CV-2453-EFM

## MEMORANDUM AND ORDER

In this bankruptcy appeal, appellant Webster Capital Finance, Inc. f/k/a Center Capital Corporation ("Webster Capital") seeks review of various orders issued by the United States Bankruptcy Court for the District of Kansas. Webster Capital challenges the bankruptcy court's order denying its untimely objection to confirmation, confirming the debtor's Chapter 11 Small Business Plan, and treating Ottawa Bus Service, Inc., as a small business debtor. For the reasons set forth below, the bankruptcy court's order is affirmed.

## I. Factual and Procedural Background

### A. Ottawa Bus's Bankruptcy Filing and Chapter 11 Small Business Plan

Webster Capital is a Connecticut corporation that provides financing to various business ventures. Defendants Daniel Newby and Thomacine Newby are residents of Kansas City, Missouri, who operate Ottawa Bus Service, Inc. ("Ottawa Bus"), a Kansas corporation. On February 19, 2002, Webster Capital and Ottawa Bus entered into Master Loan and Security Agreement No. 31505 (the "Master Loan Agreement"), which provided the terms under which Webster Capital would extend credit and financing to Ottawa Bus. Pursuant to the Master Loan Agreement, Webster Capital and Ottawa Bus entered into at least six loan schedules, under which Webster Capital financed and obtained a purchase money security interest in several pieces of collateral. Ottawa Bus failed to pay monthly installments for July, August, and September 2010. Accordingly, on September 2, 2010, Webster Capital sent Ottawa Bus a Notice of Default, which accelerated the balance due under the various loan schedules.

On November 22, 2010, Ottawa Bus filed a voluntary petition for bankruptcy protection under Chapter 11. The voluntary petition did not identify Ottawa Bus as a small business debtor. Schedule D of the petition listed Webster Capital as a secured creditor that was owed $508,025.38 as of the petition date. On May 19, 2011, Webster Capital filed its secured proof of claim in the amount of $482,257.23. Several days later, the bankruptcy court entered a stipulation and agreed order regarding adequate protection payments from Ottawa Bus to Webster Capital.

On November 15, 2011, Ottawa Bus filed its Chapter 11 Small Business Plan (the "Plan"), which listed Webster Capital as a secured creditor. The Plan provided that "[t]he rights and obligations of any entity named or referred to in this Plan will be binding upon . . . such

entity."[1] On January 3, 2012, the bankruptcy court set a confirmation hearing for February 22, 2012, and sent notice of the hearing to all parties involved, including counsel for Webster Capital. Webster Capital did not file an objection prior to that date, it did not return a voting ballot rejecting the Plan, and its attorneys did not appear at the hearing to protect Webster Capital's interests. Accordingly, at the confirmation hearing on February 22, 2012, the bankruptcy court conditionally confirmed the Plan, subject to the resolution of two timely-filed objections by other secured creditors. Ottawa Bus resolved both timely-filed objections in early March 2012.

**B. Webster Capital's Untimely Objection to Confirmation**

On April 5, 2012, more than six weeks after the bankruptcy court conditionally confirmed the Plan, Webster Capital filed an objection to confirmation. Ottawa Bus submitted a response and moved to strike the objection as untimely. Webster Capital then filed a motion for leave to file an objection out of time, asserting that its delay constituted excusable neglect under Fed. R. Bankr. P. 9006. In support of its motion for leave, Webster Capital alleged that it had numerous email discussions and telephone conferences with Ottawa Bus's attorneys regarding the Plan, such that Webster Capital believed it could negotiate a resolution in good faith.[2] The bankruptcy court scheduled a hearing for these motions to take place on May 8, 2012, but Webster Capital sought and obtained a continuance. Finally, on June 20, 2012, the bankruptcy court heard oral argument and declined to consider Webster Capital's untimely objection, reasoning as follows:

---

[1] Chapter 11 Small Business Plan, Doc. 5-2, at 37.

[2] While Webster Capital refers to e-mail correspondence, the record on appeal reveals that Webster Capital did not attach specific communications as exhibits to its motion for leave to file its objection out of time.

> The Court has already conditionally, some months ago, confirmed this plan subject to the changes that have been agreed upon with the timely objecting creditors and the ones who appeared at the hearing. And so the Court is going to grant the motion to strike and will not consider, obviously, the untimely filed objections to confirmation. I just think that not timely filing an objection to confirmation and/or not appearing at a hearing that is set for confirmation or approval of the disclosure statement, a creditor does so at its own peril.
>
> And based on these facts, the Court and its discretion, and based on the practice of law, just doesn't feel that that standard is reached, whether it is *Pioneer*, which dealt with an order entered in a Chapter 11 case or under any other standard, whether it is under Rule 60(b) or any other standard that expresses excusable neglect. Because generally excusable neglect is not – it is not enough that counsel made a mistake, I mean, the case law generally supports that procedural aspect.
>     . . . .
>
> And that is why the Court – another reason the Court would not allow an untimely objection to confirmation to the plan to allow one creditor with an untimely objection throw a wrench into the works of a plan that has taken months to solidify in which creditors, other secured lenders have made compromises and have reached this point, probably in a critical mass, in which this debtor needs to just move down the road and do what it does best and conduct its business, and part of that business is paying its debts as secured creditors. So that falls into the balance as well.[3]

On July 3, 2012, the bankruptcy court entered its order confirming the Plan and denying Webster Capital's objection as untimely.[4] On July 17, 2012, Webster Capital filed its Notice of Appeal challenging the bankruptcy court's order denying its objection to confirmation and arguing that the court erred in failing to find excusable neglect.

## II. Standards Governing Bankruptcy Appeals

In reviewing a bankruptcy court's decision, this Court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling.[5] Generally, "[l]egal decisions of the bankruptcy court are reviewed de novo and factual findings are

---

[3] Hearing Transcript from June 20, 2012, Doc. 9-3, at 23-27.

[4] Order Confirming Plan, Doc. 5-12, at 9.

[5] 28 U.S.C. § 158(a); Fed. R. Bankr. P. 8013.

reviewed for clear error."[6] However, a bankruptcy court's decision to permit or refuse untimely motions for excusable neglect is reviewed only for abuse of discretion.[7] This Court will not disturb the bankruptcy court's decision unless it has "made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."[8] An abuse of discretion occurs when the bankruptcy court's decision was "arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment."[9]

### III. Analysis

### A. The Bankruptcy Court Did Not Abuse Its Discretion in Denying Webster Capital's Untimely Objection

Webster Capital argues that the bankruptcy court abused its discretion when it struck Webster Capital's untimely objection and denied its motion for leave to file an objection to confirmation out of time. As a preliminary matter, Ottawa Bus argues that the Court should decline to consider various documents Webster Capital included in the record on appeal. In support of its argument that the parties were engaged in settlement negotiations, Webster Capital provided this Court with over eighty pages of e-mail correspondence and telephone records that were not presented to the bankruptcy court. The record on appeal, however, should consist only of items that were before the bankruptcy court at the time of its decision.[10] Accordingly, the

---

[6] *Jenkins v. IBD, Inc.*, 489 B.R. 587, 593 (D. Kan. 2013).

[7] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 398 (1993); *see In re Enron Corp.*, 419 F.3d 115, 124 (2d Cir. 2005) (holding that a bankruptcy court's finding regarding excusable neglect is reviewed for abuse of discretion and is not subject to de novo review).

[8] *Reeves v. Reeves*, 502 F. App'x 776, 778 (10th Cir. 2012) (citation omitted).

[9] *Id.*

[10] *See* Fed. R. App. P. 10(e); *Opetubo v. Citibank Student Loan Corp.*, 74 F. App'x 145, 146 (2d Cir. 2003); *In re Peter J. Gould*, 2008 WL 2945606, at *2 (D. Conn. July 28, 2008).

Court will restrict its review to the evidence that was before the bankruptcy court when it decided to strike Webster Capital's objection to confirmation on June 20, 2012.

Federal Rule of Bankruptcy Procedure 9006(b) grants bankruptcy courts discretion to enlarge a deadline "where the failure to act was the result of excusable neglect."[11] "[B]y empowering the courts to accept late filings where the failure to act was the result of excusable neglect . . . Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."[12]

In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,[13] the Supreme Court articulated four factors that a court must consider in determining whether a party's neglect is excusable: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. The determination of whether a party's neglect of a deadline was excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."[14] Ottawa Bus does not present any evidence that Webster Capital filed its untimely objection in bad faith, and the record does not support such an assertion. Accordingly, the Court will analyze the remaining three *Pioneer* factors.

---

[11] Fed. R. Bankr. P. 9006(b)(1). This rule of bankruptcy procedure closely tracks the language of Fed. R. Civ. P. 6(b)(1)(B), which provides, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."

[12] *Pioneer*, 507 U.S. at 388.

[13] *Id.*

[14] *Id.*

**1. Danger of Prejudice to Ottawa Bus**

Under the first *Pioneer* factor, courts must weigh the danger that an untimely objection would result in prejudice to the debtor.[15] Webster Capital argues that Ottawa Bus would not be prejudiced by the untimely objection because it was aware of Webster Capital's concerns through negotiations that occurred before and after confirmation. After considering the record and the status of Ottawa Bus as a debtor, however, the bankruptcy court expressly found that "if the Court were to allow an untimely objection at this late date in June to proceed, then it throws a wrench into everything and curtails and potentially destroys the ability of this debtor to effectually reorganize."[16] For this very reason, the bankruptcy court ruled that it would not "allow one creditor with an untimely objection [to] throw a wrench into the works of a plan that has taken months to solidify . . . ."[17]

The Court is not persuaded that the bankruptcy judge abused his discretion in reaching this conclusion. The bankruptcy court unambiguously found that allowing Webster Capital's untimely objection would jeopardize Ottawa Bus's ability to reorganize. Particularly relevant to this decision, the bankruptcy court noted that Ottawa Bus and numerous creditors negotiated for months and resolved timely-filed objections to arrive at the Plan's terms, which could become unworkable if Webster Capital's objection was sustained. Accordingly, the Court finds that the bankruptcy court did not abuse its discretion in finding that Ottawa Bus would suffer unfair prejudice if Webster Capital were allowed to proceed with its untimely objection.

---

[15] *Id.*

[16] Hearing Transcript from June 20, 2012, Doc. 9-3, at 26.

[17] *Id.* at 23-27.

## 2. Length and Impact of Delay

The second *Pioneer* factor requires courts to consider the length and impact of delay associated with an untimely filing.[18] The bankruptcy court conditionally confirmed the Plan on February 22, 2012. At this time, only two creditors filed timely objections, which were quickly resolved. Webster Capital was not considered among those objecting creditors solely because its counsel elected not to appear at the confirmation hearing. The bankruptcy court explained the significance of this absence as follows:

> And after the hearing we had a discussion in the conference room with regard to how the objections to confirmation could be resolved with the creditors who did bother to appear at the hearing and who did timely file objections to confirmation of the plan. And if Webster would have been here, then Webster would have certainly been a party to the negotiations after the confirmation hearing with regard to treatment [of] its and other creditor's claims. So it is important that Webster wasn't here for the noticed confirmation hearing. I think that if counsel doesn't appear they really do so at their own peril.[19]

Webster Capital filed its objection six weeks after the Plan was conditionally confirmed. Because Webster Capital itself sought and obtained a continuance, the bankruptcy court did not hold a hearing on the objection until June 20, 2012, nearly four months after the Plan's conditional confirmation.

As noted above, the bankruptcy court not only considered the length of delay, but also found that such delay would negatively impact the positions of Ottawa Bus and other creditors. The court concluded that Webster Capital's untimely objection would not only jeopardize Ottawa Bus's ability to effectively reorganize, but would also substantially impair the rights of creditors that filed timely objections and diligently appeared for the confirmation hearing. The bankruptcy court also noted that Webster Capital would retain its secured position and would

---

[18] *Pioneer*, 507 U.S. at 388.

[19] Hearing Transcript, Doc. 9-3, at 24.

receive full payment of its claim regardless of whether it permitted the untimely objection. Given the bankruptcy court's thorough consideration and ruling that altering the Plan may harm Ottawa Bus and the remaining creditors, the Court cannot find that the bankruptcy court abused its discretion in denying the untimely objection due to the length and impact of Webster Capital's delay.

### 3. Reason and Responsibility for Delay

The third *Pioneer* factor requires courts to consider the reason for the delay, including whether it was within the reasonable control of the movant.[20] It is uncontroverted that Webster Capital received notice of the objection deadline but failed to file an objection until six weeks after the deadline had passed. However, Webster Capital argues that it elected not to file an objection because its attorneys and counsel for Ottawa Bus were engaged in ongoing negotiations concerning the Plan in the months before and after confirmation. Ottawa Bus denies that the parties' communications constituted negotiations regarding Webster Capital's treatment under the Plan and denies that the parties formed any agreement that Webster Capital preserved a right to object after confirmation.

Courts in several jurisdictions have analyzed the extent to which settlement negotiations may give rise to excusable neglect.[21] Webster Capital primarily relies upon *Friedman & Feiger, LLP v. ULofts Lubbock, LLC*,[22] in support of its argument that settlement negotiations justified its untimely objection. *Friedman* involved a civil dispute between two parties, in which the plaintiff filed an answer to the defendant's counterclaim twelve days late.[23] The plaintiff filed a

---

[20] *Pioneer*, 507 U.S. at 388.

[21] *See, e.g., In re Langston,* 319 B.R. 667, 670-71 (D. Utah 2005); *Friedman & Feiger, L.L.P. v. ULofts Lubbock, LLC*, 2009 WL 3378401, at *2 (N.D. Tex. Oct. 19, 2009).

[22] 2009 WL 3378401 (N.D. Tex. Oct. 19, 2009).

motion to respond out of time, alleging excusable neglect on the basis of ongoing settlement negotiations.²⁴ The court in *Friedman* recognized that no rule affirmatively prohibited courts from considering settlement negotiations, and it ultimately found excusable neglect on that basis.²⁵

Unlike *Friedman*, however, this bankruptcy proceeding affects Ottawa Bus, Webster Capital, and numerous creditors that rely upon negotiated terms of the confirmed Plan. When evaluating excusable neglect in the bankruptcy context, "it is important for the court to determine whether granting an extension would unduly delay the administration of the bankruptcy case, given the unique context of bankruptcy proceedings."²⁶ Because bankruptcy proceedings involve negotiation and collaboration among numerous parties, some bankruptcy courts have exercised discretion to deny untimely filings despite the existence of settlement negotiations when the objecting party received notice but failed to file an objection or to appear at a critical hearing.²⁷ Ongoing discussions between a debtor and a creditor do "not excuse [the creditor] from complying with the [local bankruptcy rules] by filing a timely response, attending the hearing, or seeking a continuance."²⁸ While this district has not had occasion to address this issue in the bankruptcy context, this Court has noted that settlement negotiations do not abrogate a party's responsibility to diligently observe procedural rules.²⁹

---

²³ *Id.* at *1.

²⁴ *Id.*

²⁵ *Id.*

²⁶ *Nugent v. Betacom of Phoenix, Inc.*, 250 B.R. 376, 381 n. 6 (9th Cir.2000) (internal quotations omitted).

²⁷ *In re Contessa Liquidating Co., Inc.*, 2012 WL 2153271, at *2 (Bankr. C.D. Cal. June 13, 2012); *see In re Langston*, 319 B.R. 667, 670-71 (D. Utah 2005).

²⁸ *In re Contessa Liquidating Co.*, 2012 WL 2153271 at *2.

Given the unique nature of bankruptcy proceedings, especially those concerning plan confirmation, the Court cannot conclude that the bankruptcy court's refusal to find excusable neglect despite the existence of communications was "arbitrary, capricious or whimsical."[30] Webster Capital is not an unsophisticated litigant, and it was represented by counsel at all times relevant to confirmation of the Plan. Because counsel for Webster Capital received notice but affirmatively elected not to file an objection or to attend the confirmation hearing, the Court agrees with the bankruptcy court that Webster Capital bore significant responsibility for the delay. Because Webster Capital's delay was within its control and because an untimely filing would prejudice Ottawa Bus and negatively impact other creditors, the Court must affirm the bankruptcy court's order denying Webster Capital's objection.

**B. Webster Capital's Objections to Confirmation Are Barred as Untimely**

Because the Court affirms the bankruptcy court's finding that Webster Capital's untimely objection did not result from excusable neglect, the Court does not reach the substance of Webster Capital's untimely and unpreserved objection.

**C. Webster Capital's Objections to Ottawa Bus's Treatment as a "Small Business Debtor" are Untimely**

Finally, Webster Capital argues that the bankruptcy court erred in treating Ottawa Bus as a "small business debtor," as defined under 11 U.S.C. § 101(51D). In its untimely objection to confirmation, Webster Capital recognized that Ottawa Bus continued to operate its business and manage its property as a small business debtor-in-possession. Webster Capital's objection

---

[29] *Id.* at *1-2 (rejecting an argument that settlement negotiations gave rise to excusable neglect under Fed. R. Civ. P. 60(b) for failure to answer a third-party complaint).

[30] *Id.*

contained a footnote, however, which alleged that "[a] question exits [sic] whether the Debtor qualifies as a 'small business debtor' under section 101(51D) of the Bankruptcy Code . . . ."[31]

For the first time on appeal, Webster Capital argues that the bankruptcy court erred in treating Ottawa Bus as a small business debtor. The Federal Rules of Bankruptcy Procedure provide that "[i]n a voluntary chapter 11 case, the debtor shall state in the petition whether the debtor is a small business debtor."[32] In this case, Ottawa Bus's voluntary petition indicated that "Debtor is *not* a small business debtor as defined in 11 U.S.C. § 101(51D)."[33] However, the record on appeal does not reflect that Webster Capital, the trustee, or any other creditors objected to Ottawa Bus's treatment at any time. For the reasons stated above, the Court finds that any such objection by Webster Capital is barred as untimely.

Further, Webster Capital has failed to show that it suffered prejudice as a result of Ottawa Bus's treatment. Although Ottawa Bus failed to mark the box on its voluntary petition for small business debtors, Ottawa Bus's counsel represented to the Court that it was determined to be a small business debtor at a meeting of the creditors on January 4, 2011, just over one month after Ottawa Bus filed its voluntary petition. On November 15, 2011, Ottawa Bus filed its Chapter 11 Small Business Plan (the "Plan"), along with its Chapter 11 Small Business Disclosure Statement. Because Webster Capital failed to file a timely objection and failed to show any resulting prejudice, its objection is barred.

---

[31] Objection to Confirmation, Doc. 5-10, at 35.

[32] Fed. R. Bankr. P. 1020(a).

[33] Voluntary Petition, Doc. 5-1, at 24 (emphasis added).

**IT IS ACCORDINGLY ORDERED** that the bankruptcy court's Order dated July 3, 2012 Confirming Chapter 11 Plan and Denying the Objection of Webster Capital Finance, Inc. to Debtor's Plan as Untimely is **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 16th day of August, 2013.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE